This suit grows out of an intersectional collision at Marshall and Crockett Streets in the City of Shreveport, Louisiana, which occurred at 5:30 a.m. January 1, 1947.
Originally suit was instituted by appellant Rhodes and three other passengers in his car at the time of the accident. The petition charged that the collision occurred through the fault of the driver of the truck, upon which defendant carried public liability insurance, in failing to observe that plaintiff's car had pre-empted the intersection; in driving into the intersection without decreasing his excessive speed of more than ten miles per hour in violation of a Shreveport city ordinance; in failing to give right-of-way to plaintiff's car approaching on the truck's right and in failing to exercise proper use and control of the brakes and steering mechanism and thus avoid the accident.
The answer denied that the driver of the truck was guilty of any negligence; asserted that the proximate cause of the accident was the negligent operation of plaintiff's automobile, and, in the alternative, pleaded contributory negligence on the part of plaintiff.
In the District Court judgment was rendered in favor of each of the four plaintiffs. The defendant paid three of the plaintiffs and we have before us a suspensive appeal from the judgment in favor of Dale F. Rhoades, owner and driver of the car involved in the collision.
The truck driver was returning from an all-night, bad weather trip to Many, Louisiana, some ninety miles distant. According to the stipulation in the record, the streets were icy and the weather still rainy. The truck was on Crockett Street traveling *Page 264 
east. Plaintiff's Pontiac automobile was on Marshall Street traveling north.
The truck driver testified that he entered the intersection at five miles per hour; that his windshield was clear and the windows on both sides of the truck were clear, but that he did not see plaintiff's Pontiac until his truck was across the center line of Marshall Street and that "before I had time to get on the brake he (the car) had already hit me." On the other hand, his helper testified that their speed was fifteen miles an hour, and in another answer he said twenty miles an hour, and that although he endeavored to do so, he could not keep the glasses clear.
Plaintiff testified that he, upon approaching the intersection, looked to the left and then looked closely to the right, the direction from which oncoming traffic would have right-of-way and the side which had a blind corner.
Mr. Robbins, who was on duty in the office of Hodges Storage, located at this corner, testified that he did not observe either vehicle until approximately the moment of impact. He gave little detailed information on the speed of either vehicle or the position of each when the other entered the intersection, but when questioned as to whether the truck hit the Pontiac or the Pontiac hit the truck, replied, "The truck hit the Pontiac the way I got at it."
No useful purpose would be served by further detailing the testimony of the four occupants of plaintiff's car and the two occupants of the truck. We conclude, after a careful study of the testimony, that the truck proceeded into the intersection at a speed of fifteen to twenty miles per hour at a time when plaintiff's Pontiac car, approaching from the truck's right, and therefore entitled to the right-of-way, was entering the intersection at approximately the same speed; that at the moment of impact, the front end of plaintiff's car had passed completely in front of the truck.
The truck's entire bumper struck plaintiff's car broadside. The left end of the bumper crushed the car's left fender, the right half of the bumper crushed in the left door and the center of the bumper buckled in the car body at the juncture between the hood and hinging point of the door, buckling the panel board on the inside of the car and pushing the car east beyond the intersection and some five feet into Crockett Street proper.
The physical facts support the District Judge's finding for the plaintiff in that the vehicles came to rest on the north curb of Crockett Street, indicating that the car had passed midpoint of Crockett Street at the time it was struck by the truck.
The fact that the front of plaintiff's car was untouched in the collision indicates that the car entered the intersection either ahead of the truck or approximately the same time. The fact that the truck driver had not time enough to apply his brakes between the time he saw plaintiff's car and the moment of collision indicates his failure to maintain a proper lookout. The fact that his truck continued through the intersection, pushing the car past the intersection and some feet into Crockett Street itself substantiates plaintiff's testimony that the truck was moving at more than the legal speed limit. Another indication of the speed of the truck was the fact that the passenger on the right side of plaintiff's car was thrown clear of the car some twenty feet down the street from the point where the Pontiac came to rest.
[1] To sum up the case against defendant, we conclude that the driver of the truck entered the intersection at a speed of fifteen to twenty miles an hour and that because of the frozen condition of the water on his windshield and side glasses, or because of his failure to maintain proper lookout, he failed to observe that plaintiff's car had preceded the truck into the intersection or was entering it at approximately the same time, and failed to slow down and bring his truck under control in time to avoid striking plaintiff's car, which had partly cleared the truck at the moment of impact.
One charge of negligence made by plaintiff was that the truck was being operated on Crockett Street in violation of the city ordinance fixing truck routes. The driver of the truck testified that because of the condition of the streets and the hills and inclines on the designated truck line, he *Page 265 
deemed it less hazardous at that time of the morning to use the downtown Crockett Street. We do not think that the violation vel non of this ordinance by the truck driver has any bearing on the decision as to which driver was negligent. Under the circumstances of the case, it was immaterial whether the truck was an ordinary automobile or a heavy truck.
[2] We do not find that the evidence has sustained defendant's charge that plaintiff was guilty of contributory negligence. The fact that the truck was large and conspicuously lighted and that each driver had a fairly clear view across the corner between them indicates that plaintiff could likely have avoided the accident had he exercised better care. However, his was a reasonable explanation. He testified that after looking to his left, he devoted his principal attention to the right, where the corner was blind and where an approaching car would have right-of-way at the intersection. In short, the testimony and physical facts, as we find them, indicate considerable probability that Rhoades was not entirely free of blame but do not establish his negligence, or show same by a reasonable preponderance of evidence. The plea of contributory negligence was properly denied.
Plaintiff was knocked unconscious by the impact. He was carried to the hospital at Barksdale Field and remained there six days. He received a cut over his left temple and testified that he had a nerve injury in his pelvic region, a torn ligament in his left leg and a sprained back and that he was unable to resume his regular duties for approximately two months, having difficulty in controlling his left leg and suffering pain in his head and legs for several weeks. His right eye was also bruised. The District Court at the request of counsel, dictated into the record his observation of plaintiff's condition, stating that plaintiff's face showed a healed scar horizontal on the left side of his face beginning an inch in front of the center of the left ear and running in an irregular line forward to the corner of the left eye and upward to the left eyebrow. The Court further stated that the scar was discolored and red and clearly observable from a distance of six feet both from a side view and the front view of the plaintiff as he sat in the witness chair. Plaintiff in his answer to the appeal has asked an increase on this item to $2500.
[3] We believe that a reasonable allowance for personal injuries would be $1500. The remaining portion of the judgment should not be disturbed.
For the reasons assigned, the judgment is amended by increasing same from $1131.70 to $1631.70, and, as amended, it is affirmed, with costs.